# Status of the Foreign Claims Settlement Commission

The Foreign Claims Settlement Commission is subject to the Attorney General's direction in administrative matters, except where that direction would interfere with the Commission's independence in adjudicating claims.

February 20, 2004

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

Your office has asked for our opinion whether the Foreign Claims Settlement Commission ("Commission") is subject to the Attorney General's direction in administrative matters. We believe that it is subject to such direction, except where that direction would interfere with the Commission's independence in adjudicating claims.[1]

## I.

The Commission consists of a Chairman and two members, who are appointed by the President with the Senate's advice and consent and serve staggered three-year terms. 22 U.S.C. § 1622c(a)–(c) (2000). It has "jurisdiction to receive, examine, adjudicate, and render a final decision with respect to any claim of the Government of the United States or of any national of the United States" under "claims agreement[s] . . . between the Government of the United States and a foreign government . . . providing for the settlement and discharge of claims" that the United States or its nationals have against the foreign government. 22 U.S.C. § 1623(a)(1)(B) (2000).

The Commission itself, although it had institutional predecessors, was established by Reorganization Plan 1 of 1954, 68 Stat. 1279, *codified at* 22 U.S.C. § 1622 note ("Reorganization Plan"), and continued as a free-standing entity until 1980. At that time, it was "transferred to the Department of Justice as a separate agency within that Department." 22 U.S.C. § 1622a (2000), *codifying* Pub. L. No. 96-209, § 101, 94 Stat. 96, 96 (1980); *see also* 28 C.F.R. § 0.128 (2003) (organization of Commission).

Under the terms of the transfer, "[a]ll functions, powers, and duties of the [Commission] are . . . transferred with the Commission." 22 U.S.C. § 1622b (2000). In addition, "[a]ll functions, powers, and duties not directly related to adjudicating claims are . . . vested in the Chairman, including the functions set forth in section 3 of Reorganization Plan 1 of 1954 and the authority to issue rules

---

[1] We address only the statutory question of the Attorney General's administrative control and do not consider the President's authority to supervise the Commission or any constitutional issues that would arise to the extent the Commission might be insulated from control by the President.

and regulations." *Id.* § 1622e (2000). The "functions" in that section of the Reorganization Plan are:

> all functions of the Commission with respect to the internal management of the affairs of the Commission, including but not limited to functions with respect to: (a) the appointment of personnel employed under the Commission, (b) the direction of employees of the Commission and the supervision of their official activities, (c) the distribution of business among employees and organizational units under the Commission, (d) the preparation of budget estimates, and (e) the use and expenditure of funds of the Commission available for expenses of administration.

Reorganization Plan § 3.

The Attorney General "shall provide necessary administrative support and services to the Commission." 22 U.S.C. § 1622f (2000). Although the Chairman must follow the Department of Justice's procedures in preparing "budget requests, authorization documents, and legislative proposals," the Attorney General is to "submit these items to the Director of the Office of Management and Budget as proposed by the Chairman." *Id.*

The Attorney General has no power to review the Commission's decisions on claims: "The decisions of the Commission with respect to claims shall be final and conclusive on all questions of law and fact, and shall not be subject to review by the Attorney General or any other official of the United States or by any court by mandamus or otherwise." *Id.* § 1622g (2000). Moreover, nothing in the statute transferring the Commission to the Department "shall be construed to diminish the independence of the Commission in making its determinations on claims in programs that it is authorized to administer." *Id.*

Shortly after the Commission's transfer to the Department, the Commission and the Justice Management Division began what turned out to be a continuing dispute about whether the Department could exercise administrative control over the Commission. The Assistant Attorney General for Administration seems to have argued in 1980 that the Commission "is subject to the administrative procedures and policies of the Department," but the Commission found "this conclusion . . . contrary to the plain language of [the statute transferring the Commission to the Department] as well as its legislative history." Memorandum from the Foreign Claims Settlement Commission of the United States, *Re: Relationship Between the Department of Justice and the Foreign Claims Settlement Commission* at 1 (undated) ("Undated Commission Memorandum") (describing Memorandum for Richard W. Yarborough, Chairman, Foreign Claims Settlement Commission, from Kevin D. Rooney, Assistant Attorney General for Administration, *Re: Relationship Between the Department of Justice and the Foreign Claims Settlement Commission* (April 22, 1981)). The dispute recurred in 1996, when the Commis-

sion disputed the Justice Management Division's assertion that its Chairman needed to obtain authorization from the Department before undertaking foreign travel.[2] In 2001, the issue arose again, in the context of determining the "employing agency" that may approve a Commission employee's receipt of a decoration under the Foreign Gifts and Decorations Act, 5 U.S.C. § 7342(d) (2000).[3] The immediate issue about acceptance of a foreign gift or decoration was resolved by the Deputy Attorney General's delegating to the Commission's Chairman the power to grant the approval of the "employing agency" with respect to all officers or employees of the Commission except the Chairman himself. *See* Memorandum for the Deputy Attorney General, from Janis A. Sposato, Acting Assistant Attorney General for Administration, *Re: Receipt of a Polish-Government Decoration* at 3 (Sept. 28, 2001) (signature on approval line). At your office's request, the larger issue of the Department's administrative authority over the Commission was then referred to our Office. *See* Memorandum for Jay S. Bybee, Assistant Attorney General, Office of Legal Counsel, from Janis A. Sposato, Acting Assistant Attorney General for Administration, *Re: Authority of Foreign Claims Settlement Commission* (Jan. 31, 2002).

## II.

We addressed a closely similar issue in *Attorney General's Authority with Respect to the Regulatory Initiatives of the U.S. Parole Commission*, 14 Op. O.L.C. 139 (1990) ("1990 Opinion"). For reasons discussed below, we reaffirm the validity of that opinion. The statutes governing the United States Parole Commission ("USPC") and the Commission are so similar as to require treating the two entities alike for purposes of the question here.

---

[2] Memorandum for Mark Rodeffer, Finance Staff, Justice Management Division, from David E. Bradley, Chief Counsel, Foreign Claims Settlement Commission, *Re: Foreign Travel by the Chair, Foreign Claims Settlement Commission* (Feb. 2, 1996); Memorandum for Stephen R. Colgate, Assistant Attorney General for Administration, from Stuart Frisch, General Counsel, Justice Management Division, *Re: Travel Authorizations for the Chairmen of the Foreign Claims Settlement Commission and U.S. Parole Commission* (July 8, 1997).

[3] *See* Memorandum for the Deputy Attorney General, from David E. Bradley, Chief Counsel, Foreign Claims Settlement Commission, *Re: Proposed Acceptance of Decoration from the Ministry of Finance of the Government of Poland* (Aug. 21, 2001); Memorandum for Janis A. Sposato, Acting Assistant Attorney General for Administration, from Stuart Frisch, General Counsel, Justice Management Division, *Re: Authorization for [an Employee of] the Foreign Claims Settlement Commission to Receive and Retain a Polish-Government Decoration* (Aug. 31, 2001); Memorandum for the Deputy Attorney General, from John R. Lacey, Chairman, Richard T. White, Commissioner, and Laramie F. McNamara, Commissioner, Foreign Claims Settlement Commission, *Re: Delegation of Approval Authority Under the Foreign Gifts and Decorations Act* (Dec. 12, 2001) ("2001 Commission Memorandum").

**A.**

We described the USPC in the 1990 Opinion:

> The Commission was established in 1976 as "an independent agency in the Department of Justice." The legislative history of the Act that created the Commission states that Congress intended the Commission to be "independent for policy-making purposes" but that the Commission would be "attached to the Department of Justice for administrative convenience." Indeed, the Conference Report on the bill stated that "[t]he Commission is attached to the Department solely for administrative purposes." Congress granted the Commission independence from the Department because it wanted to ensure that "parole decisionmaking [would] be independent of, and not governed by, the investigative and prosecutorial functions of the Department of Justice."

14 Op. O.L.C. at 141 (citations and parenthetical quotations omitted). In the 1990 Opinion, we considered the extent of the Attorney General's authority in light of these provisions and, in particular, whether the Attorney General could "require the [USPC] to consult the Office of Policy Development ('OPD') concerning the [USPC's] regulatory initiatives and to submit proposed regulations to OPD in advance of their submission to OMB's Office of Information and Regulatory Affairs ('OIRA')." *Id.* at 139. We concluded that "the Attorney General has the authority to require the [USPC], as an administrative unit of the Department of Justice, to coordinate its regulatory activities with OPD and other components of the Department," but that "[t]he [USPC's] statutory status as an 'independent agency' within the Department . . . precludes the Attorney General as a general matter from asserting substantive control over the [USPC's] policy-making, including its issuance of regulations." *Id.* at 139–40.

Ordinarily, the placement of an agency "within" the Department of Justice would subject the agency to the Attorney General's administrative direction. By statute, the Attorney General "is the head of the Department of Justice." 28 U.S.C. § 503 (2000). With certain exceptions, "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice are vested in the Attorney General," *id.* § 509, and he may make "such provisions as he considers appropriate" to authorize other officers, employees, and agencies of the Department to carry out the functions vested in him, *id.* § 510. *See also* 5 U.S.C. § 301 (2000) (empowering the head of a department to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property"). These provisions, in almost all circumstances, grant the Attorney General both administrative and substantive

control over the Department and the agencies within it. *See* Memorandum for Philip B. Heymann, Deputy Attorney General, from Walter Dellinger, Assistant Attorney General, Office of Legal Counsel, *Re: Creation of the Office of Investigative Agency Policies* at 2 (Oct. 26, 1993) ("Congress specifically granted broad powers to the Attorney General, vesting in her virtually all the functions within the Department, and authorizing her to delegate any of her authorities.") (citations omitted); Memorandum for D. Lowell Jensen, Associate Attorney General, from Ralph W. Tarr, Deputy Assistant Attorney General, Office of Legal Counsel at 2 n.1 (Aug. 23, 1983) (advisory commission located in the Department of Justice for administrative purposes). Although the 1990 Opinion did not explicitly refer to these provisions, they formed the evident background to our conclusion that "[b]ecause the [USPC] remains 'attached' to the Department for administrative purposes . . . the Attorney General may require the [USPC] to participate in Department-wide regulatory coordination that does not entail substantive control of the [USPC's] regulatory initiatives." 14 Op. O.L.C. at 142.

Congress has dealt, in some detail, with the administrative powers of both the USPC and the Commission, and the powers conferred in both cases are quite similar. The statute on the USPC provides that its Chairman, among other things, may hire personnel, including for temporary and intermittent services, 18 U.S.C. § 4204(a)(2), (b)(3) (repealed prospectively by Continuing Appropriations—Comprehensive Crime Control Act of 1984, tit. II, § 218(a)(5), 98 Stat. 1837, 2027); "assign duties among officers and employees . . . so as to balance the workload and provide for orderly administration," *id.* § 4204(a)(3); "direct the . . . use of funds made available to the [USPC]," *id.* § 4204(a)(4); "enter into and perform such contracts, leases, cooperative agreements, and other transactions as may be necessary in the conduct of the functions of the [USPC]," *id.* § 4204(b)(1); and accept voluntary services, *id.* § 4204(b)(2). Similarly, the statute governing the Commission enables it to hire personnel, including consultants and language experts, and to accept facilities, services, and reimbursed details from other agencies. 22 U.S.C. § 1622d (2000). It vests in the Chairman "[a]ll functions, powers, and duties not directly related to adjudicating claims," including functions set forth in the Reorganization Plan, *id.* § 1622e. The Reorganization Plan, through this incorporation by reference, places under the Chairman's control "the internal management of the affairs of the Commission," including "the direction of employees of the Commission and the supervision of their official activities" and "the use and expenditure of funds of the Commission available for expenses of administration." Reorganization Plan § 3.

In the case of the USPC, we did not interpret the specific provisions on administrative authority as generally displacing the Attorney General's authorities under 28 U.S.C. §§ 509 and 510 and 5 U.S.C. § 301.[4] The conferral of specific authori-

---

[4] Although the 1990 Opinion addresses only one specific case of administrative control, its conclusions are more general. In a footnote to the conclusion that the USPC's being attached to the

ties on the constituent part of the Department, without more, did not mean that the same authority was not vested in the Attorney General under section 509. Because the Commission, too, is "within" the Department, *see* 22 U.S.C. § 1622a, the same principle would apply here, unless some valid ground for distinction between the Commission and the USPC can be found.[5]

**B.**

When the legislation that transferred the Commission to the Department was being drafted, we wrote a bill comment stating that the "relationship of the Commission to the Department is similar to that provided for the United States Parole Commission, which is attached to the Department of Justice solely for administrative purposes." Memorandum for Michael Dolan, Office of Legislative Affairs, from Larry A. Hammond, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Draft Bill to Transfer the Foreign Claims Settlement Commission of the United States to the Department of Justice* (Jan. 24, 1979) (citations omitted) ("1979 Bill Comment"). There are, however, four principal arguments for the view that the two entities are dissimilar in administrative matters.

First, according to the Undated Commission Memorandum,

> The Department of Justice conclusion that administration of the Commission rests with the Attorney General rather than the Chairman rests apparently on the thesis that the Congress intended the same authority in the Chairman of the [Commission] as was granted by legislation creating the Parole Commission. A comparison of the two statutes shows such conclusion to be totally without support. No where [sic] in the statute does Congress vest in the Parole Commis-

---

Department for administrative purposes subjects it to Department-wide requirements for coordination, the 1990 Opinion notes that "Congress has expressly provided, however, that the Commission's budgetary requests shall be separate from those of any other component of the Department." 14 Op. O.L.C. at 142 n.4 (citation omitted). The plain implication is that the conclusion about the Attorney General's power reaches other administrative matters, with budgetary requests being an express exception.

[5] Regulations issued by the Department in 1981 appear to have treated the Commission as subject to the Attorney General's direction in administrative matters. A delegation of the Attorney General's authority to the Deputy Attorney General, which listed components reporting to the Deputy Attorney General, provided that "[t]he Foreign Claims Settlement Commission is under the supervision of the Deputy Attorney General for administrative purposes." 46 Fed. Reg. 52,339, 52,341 (1981) (issuing 28 C.F.R. § 0.15(b)). Although the regulation elsewhere used the term "supervision and direction," *see id.*, the omission of "direction" was not consequential for present purposes, since the relationship of the Attorney General to the Deputy Attorney General was also described as one of "supervision." *See id.* at 52,341 ("[s]ubject to the general supervision of the Attorney General"). The regulation was amended in 1988 to remove the specification of the units under the Deputy Attorney General and to substitute a general reference to the Deputy Attorney General's "direct[ing] the activities of organizational units as assigned." 53 Fed. Reg. 5370 (1988) (amending 28 C.F.R. § 0.15(b)).

> sion or its Chairman the broad powers vested in the Chairman of the [Commission] by section 105 of Public Law 96-209.

*Id.* at 4. Section 105 is the provision under which "[a]ll functions, powers, and duties not directly related to adjudicating claims are hereby vested in the Chairman." But although the statute on the USPC does not use the "[a]ll functions" formulation, it does state that the Chairman "shall . . . exercise such other powers and duties and perform such other functions as may be necessary to carry out the purposes of this chapter," 18 U.S.C. § 4204(a)(7), and this catch-all appears, in practical effect, as broad as the provision to which the Undated Commission Memorandum points. The Chairman of the USPC, therefore, does not have appreciably narrower administrative authorities than the Chairman of the Commission, and the two entities cannot be distinguished on such a ground. Moreover, even before the Commission was transferred to the Department, "all functions of the Commission with respect to the internal management of the affairs of the Commission" were "vested in the Chairman." Reorganization Plan § 3. Accordingly, the evident purpose for vesting authority in the Chairman was not to exclude the authority of the Attorney General, but to set the relative roles of the Chairman and the other members of the Commission.

Second, under 22 U.S.C. § 1622f, "[t]he Chairman shall prepare the budget requests, authorization documents, and legislative proposals for the Commission within the procedures established by the Department of Justice, and the Attorney General shall submit these items to the Director of the Office of Management and Budget as proposed by the Chairman." Thus, the Commission argues, "although [the statute] . . . refers to 'procedures established by the Department of Justice,' it limits the applicability of those only to 'budget requests, authorization documents, and legislative proposals.'" 2001 Commission Memorandum at 3. At least as to budget requests, the Commission's statute is hardly different from the USPC's. By statute, the USPC's appropriations requests "shall be separate from those of any other agency of the Department of Justice." 18 U.S.C. § 4203(a)(3). In 1977, we construed this provision as protecting the USPC's ability to request whatever amount it considered necessary for its operations, but not as precluding the Department from insisting on "the administrative mechanics of the budgetary submission procedure implemented by the Department of Justice on the instructions of the Office of Management and Budget." Memorandum for James S. Jardine, Special Assistant to the Attorney General, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Interpretation of 18 U.S.C. 4203(a)(3), the Budgetary Authority of the United States Parole Commission* at 2 (Oct. 27, 1977). In both cases, therefore, the special protections for the agency's budget requests, as limited by the procedural requirements, are virtually identical.

More generally, by making the Commission subject to certain administrative controls over the form of budget requests, authorization documents, and legislative

proposals, the Commission's statute does not imply that the Commission is otherwise outside such controls. The statute supplies an additional, specific protection for the Commission's requests in these areas, which are closely tied to its substantive work, and the reference to the Department's procedures serves to set the limits of this additional protection. The draft version of the legislation transferring the Commission that we reviewed in 1979 appears to have provided that the Attorney General could attach his recommendations to the Commission's budget requests, *see* 1979 Bill Comment at 1, and we "suggest[ed] that the Commission be authorized to submit its budget request without review and recommendations of the Attorney General in order to avoid undermining its independence from the Department." We specifically offered the similar provision for the Parole Commission as a model. *Id.* The specific treatment of the procedures, budgets and similar matters should not be taken to imply that, in other areas not touching so directly on the Commission's substantive work, the Attorney General lacks administrative control over the Commission.

Third, "the paramount purpose of the 1980 act [transferring the Commission to the Department] was to streamline the Executive Branch by reducing the number of free-standing, individual agencies in it," and "[t]here is no suggestion anywhere in the [committee] report of any intent to reduce the [Commission] Chairman's administrative autonomy." 2001 Commission Memorandum at 4. But, assuming that the legislative purpose was to streamline the executive branch, it might be perfectly consistent with that purpose for the Commission and its Chairman to be placed under the Attorney General's administrative control. If, for example, the Commission no longer maintained separate approval mechanisms for various administrative matters, its integration into the Department's mechanisms could promote consistency and allow the application of the expertise arising from the Department's more extensive experience.[6]

Fourth, the Commission's statute provides that "[t]he Attorney General shall provide necessary administrative support and services to the Commission." 22 U.S.C. § 1622f. The requirement, in mandatory language, that the Attorney General provide administrative support and services arguably conflicts with the idea that the Commission, from an administrative standpoint, is sufficiently like other entities within the Department of Justice to be subject to the Attorney General's administrative control. Those entities, as a matter of course, receive administrative support as directed by the Attorney General and his delegates. The statutory requirement for the Attorney General to provide administrative support to the Commission might seem to bespeak a more distant relationship. However, while provisions requiring that one entity or official support another usually apply to

---

[6] We take no position, of course, on such issues as whether the Attorney General might want to delegate approval authorities to the Commission. The point is that Congress could have considered that the transfer of the Commission would increase efficiency by providing for the Commission to be integrated, as appropriate, into the Department's administrative mechanisms.

entities that are administratively distinct, *see, e.g.*, 21 U.S.C. § 1908(d)(3) (2000) (the Attorney General and Treasury Secretary provide a legislative-branch commission "such administrative services, funds, facilities, and other support services as are necessary for the performance of the Commission's duties"); 21 U.S.C. § 1704(c) (2000) (Administrator of General Services Administration is to provide Director of Office of National Drug Control Policy "such administrative support services as the Director may request"), they are not invariably found in that context, *see* Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 811(a)(1)(A), 110 Stat. 1214, 1312 (1996) (using particular identified funds, the Attorney General is to "provide support and enhance the technical support center and tactical operations of the Federal Bureau of Investigation"); 28 U.S.C. § 586(c) (2000) (United States Trustees are under the "general supervision of the Attorney General, who shall provide general coordination and assistance" to them). The provision on administrative support clarifies that, despite the Commission's being a "separate agency" with the Department, 22 U.S.C. § 1622a, and its having separate authority over budgetary matters, *id.* § 1622f, the Attorney General may make available to the Commission the administrative resources of the Department. This clarification does not undermine the Attorney General's authority over the Commission in administrative matters.

## C.

To be sure, administrative control by the Attorney General in some cases could interfere with the substantive independence of the Commission, and, in those cases in which it would, we would not conclude that the Attorney General could exercise such control. As the 1990 Opinion shows, however, procedural requirements do not necessarily trench upon an agency's substantive independence. 14 Op. O.L.C. at 142. We therefore cannot accept the categorical view that the independence of the Commission in its adjudicatory functions implies a similar independence from administrative controls.

M. EDWARD WHELAN III
*Principal Deputy Assistant Attorney General*
*Office of Legal Counsel*
